IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **PIEDMONT OFFICE REALTY TRUST, INC.,**<br><br>         **Plaintiff,**<br><br>v.<br><br>**XL SPECIALTY INSURANCE COMPANY,**<br><br>         **Defendant.** | 1:13-cv-02128-WSD |

**OPINION AND ORDER**

This matter is before the Court on XL Specialty Insurance Company's ("Defendant") Motion to Dismiss Piedmont Office Realty Trust, Inc.'s ("Plaintiff") Complaint.

**I.    BACKGROUND**

    A.    Factual and Procedural History

        *1.    Terms and Conditions of the Insurance Policy*

Plaintiff purchased a primary insurance policy ("Primary Policy") from Liberty Surplus Insurance Company that provided $10 million of insurance coverage for third-party claims brought against Plaintiff and its current or former officers and directors. Compl. at ¶ 12-13. Plaintiff also purchased an excess

insurance policy from Defendant ("the Excess Policy") that provided an additional $10 million of insurance coverage in excess of the coverage provided under the Primary Policy. Id. at ¶ 21-24. The Excess Policy applies "in conformance with the terms, conditions, endorsements, and warranties of the Primary Policy together with the terms, conditions, endorsements and warranties of any other Underlying Insurance." Id. at ¶ 22. In other words, the terms and conditions of the Primary Policy apply equally to any claim for coverage under the Excess Policy unless the terms and conditions of the two policies contradict each other.[1] Id. The Primary Policy, the terms of which are deemed included in the Excess Policy, provides coverage for third-party liability arising out of a securities claim as follows:

> If Insuring Agreement C coverage is granted pursuant to Item E of the Declarations, the Insurer will pay on behalf of the Company Loss not otherwise covered under Insuring Agreement B(2) which the Company shall become legally obligated to pay as a result of a Securities Claim first made during the Policy Period or Discovery Period, if applicable, against the Company for a Wrongful Act which takes place during or prior to the Policy Period.

See Ex. A, attached to Compl. at 4.

---

[1] The parties do not contend that there are any contradictory terms and conditions relevant to this coverage dispute.

2

The Defendant's duty to provide coverage for the settlement of a securities claim by the Plaintiff is subject to Section III (A) of the Primary Policy, which is deemed included in the Excess Policy.  Section III (A) of the Primary Policy provides that:

> No Claims Expenses shall be incurred or settlements made, contractual obligations assumed or liability admitted with respect to any Claim without the Insurer's written consent, which shall not be unreasonably withheld.  The Insurer shall not be liable for any Claims Expenses, settlement, assumed obligation or admission to which it has not consented.

Id. at 6.

Under the General Conditions of the Primary Policy, which are deemed included in the Excess Policy, a cause of action against the Defendant may not be maintained unless:

> . . . as a condition precedent, thereto, there shall have been full compliance with all of the terms of this Policy, and the amount of the Insureds' obligation to pay shall have been finally determined either by judgment against the Insureds after actual trial, or by written agreement of the Insureds, the claimant and the Insurer.

Id. at 13.

    2.    *The Underlying Securities Claim*

On March 12, 2007, the Washtenaw County Employees' Retirement System ("Washtenaw") filed a securities fraud complaint against the Plaintiff and its officers and directors in the United States District Court for the District of

Maryland ("the Securities Action"). Compl. at ¶ 28. The case was thereafter transferred to this Court.[2] Id.

On August 2, 2010, Plaintiff moved for summary judgment in the Securities Action. Id. at ¶ 32. The Plaintiff's Motion was denied. Id. Plaintiff renewed its motion for summary judgment prior to trial, and the district court granted summary judgment to the Plaintiff on all of Washtenaw's remaining claims. Id. at ¶ 34.

On October 12, 2012, Washtenaw filed its notice of appeal of the summary judgment entered in favor of the Plaintiff. Id. While Washtenaw's appeal was pending, Washtenaw and the Plaintiff agreed to mediate the dispute to determine whether they could reach a settlement. At the mediation, Washtenaw demanded over $158 million in damages. Id. at ¶ 38. By that time, the Defendant had paid nearly $4 million in defense costs under the Excess Policy. Id. at ¶ 37. Plaintiff sought the Defendant's consent to settle the dispute with Washtenaw for the amount remaining under the Excess Policy Limit. Id. Defendant evaluated the merits of Washtenaw's appeal and declined to contribute more than $1 million towards any settlement. Id. at ¶ 38.

Plaintiff, without seeking Defendant's consent, agreed with Washtenaw to

---

[2] Defendant elected to pay the costs of defending the Securities Action after Plaintiff exhausted the $10 million limit under the Primary Policy. Id. at ¶ 37.

settle the underlying dispute for $4.9 million.  Id. at ¶ 39.  Plaintiff claims that it "was compelled to settle the Underlying Suit for $4.9 million to protect its interests, given the magnitude of Washtenaw's claimed damages, the risk of reversal on appeal, and the prospect of continued costly and time consuming litigation."  Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss at 8.

On November 8, 2012, Plaintiff wrote to the Defendant, demanding that Defendant pay the $4.9 million which the Plaintiff had agreed to pay to settle the Securities Action.  In its demand, Plaintiff threatened to assert claims under O.C.G.A. § 33-4-6 for Defendant's bad faith refusal to pay.  Compl. at ¶ 41.

On January 4, 2013, Defendant responded to the Plaintiff's written demand, asserting that it was not obligated to provide coverage for the settlement amount because Plaintiff did not seek Defendant's consent to the settlement Plaintiff reached, and Defendant's refusal to provide consent thus was not unreasonably withheld because it was not sought.  See Ex. 1, attached to Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss at 2-3.

On April 18, 2013, the district court entered a final order approving the settlement that Plaintiff had reached with Washtenaw.  Compl. at ¶ 43.

On April 19, 2013, Plaintiff wrote to the Defendant again demanding payment for the full settlement amount of $4.9 million, and again threatening

5

litigation under O.C.G.A. § 33-4-6.  On April 29, 2013, Defendant contributed $1 million towards the settlement of the Securities Action in accordance with its agreement during the mediation to contribute that amount towards a proposed resolution of the dispute.  Id. at ¶ 45.  Defendant refused to pay the additional $3.9 million that Plaintiff unilaterally paid to resolve the Securities Action.

On June 25, 2013, Plaintiff filed its Complaint against Defendant in which it alleged that Defendant breached its contractual obligation to pay the full settlement amount.  Plaintiff also alleged that it was entitled to statutory damages because Defendant violated O.C.G.A. § 33-4-6, and acted in bad faith when it refused to pay the full amount of the settlement in the Securities Action.  On August 8, 2013, Defendant moved to dismiss the Complaint.[3]

## II. DISCUSSION

### A. Legal Standard

The law governing motions to dismiss pursuant to Rule 12(b)(6) is well-settled.  Dismissal of a complaint is appropriate "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the

---

[3] The parties submit various documents to support their contentions in this case. These documents are properly before the Court, and the Court will consider them because they are central to the claims at issue, and their authenticity is not in dispute.

cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).

In considering a motion to dismiss, the Court accepts the plaintiff's allegations as true and considers the allegations in the complaint in the light most favorable to the plaintiff.  See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1295 (11th Cir. 2007); see also Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999) ("At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."). The Court, however, is not required to accept a plaintiff's legal conclusions.  See Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)), abrogated on other grounds by Mohamad v. Palestinian Auth., 132 S. Ct. 1702 (2012).  Nor will the Court "accept as true a legal conclusion couched as a factual allegation."  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Ultimately, the complaint is required to contain "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.[4]

---

[4] The Supreme Court explicitly rejected its earlier formulation for the Rule 12(b)(6) pleading standard: "'[T]he accepted rule [is] that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the

To state a claim to relief that is plausible, the plaintiff must plead factual content that "allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Plausibility" requires more than a "sheer possibility that a defendant has acted unlawfully," and a complaint that alleges facts that are "merely consistent with" liability "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. (citing Twombly, 550 U.S. at 557). "To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions; they are required to allege some specific factual bases for those conclusions or face dismissal of their claims." Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1263 (11th Cir. 2004) ("[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal.") (citations omitted).[5]

---

plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Twombly, 550 U.S. at 577 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The Court decided that "this famous observation has earned its retirement." Id. at 563.

[5] Federal Rule of Civil Procedure 8(a)(2) requires the plaintiff to state "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In Twombly, the Supreme Court recognized the liberal minimal standards imposed by Federal Rule 8(a)(2) but also acknowledged that "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555.

B.   Analysis

Defendant argues that the Plaintiff's Complaint should be dismissed because the Primary Policy does not provide coverage for Plaintiff's unilateral and voluntary agreement to settle the Securities Action. The relevant provisions of the Primary Policy, read as a consistent whole, provide that the insurer provides coverage for "Securities Claims" which the insured becomes "legally obligated to pay." Ex. A, attached to Compl., at 4. A Securities Action cannot be settled "without the Insurer's written consent" and the "Insurer shall not be liable for any settlement to which it has not consented." Id. at 6. Finally, it is a "condition precedent" to assert a claim under the Policy that there be "full compliance with all of the terms of [the] Policy, and the amount of the Insureds' obligation to pay shall have been finally determined either by judgment against the Insureds after actual trial, or by written agreement of the Insureds, the claimant and the Insurer." Id. at 13. These conditions were not met.

Here, Plaintiff unilaterally, and in its own discretion based on its perception of risk and its economic interests, decided to voluntarily settle the Securities Action. Defendant argues that, by the plain terms of the insurance agreement, the Primary Policy does not provide coverage of the settlement amount, and the Plaintiff's Complaint is required to be dismissed. The settlement was not

9

consented to by the Defendant in writing, and there was no judgment entered after an actual trial.

Defendant argues that the Supreme Court of Georgia's decision in Trinity Outdoor, LLC v. Cent. Mut. Ins. Co., 679 S.E.2d 10 (Ga. 2009), on virtually identical facts, requires dismissal of Plaintiff's coverage claim.

In Trinity Outdoor, the insurance policy expressly provided that: (1) the insurer will pay only the amount that the insured is legally obligated to pay; (2) the insurer had the discretion to defend any suit and settle any claim; and (3) the insurer could be sued only to "recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial."  679 S.E.2d at 11.  The insurance policy in Trinity Outdoor also provided that "[no] insurer will, except at the insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than first aid, without [the insured's] consent."  Id. at 12.  The policy provided further that:

> [N]o person or organization has a right under this Coverage Part: a. To join us as a party or otherwise bring us into a suit asking for damages from an insured; or b. To sue us on this Coverage Part unless all of its terms have been complied with.  A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial . . . An agreed settlement means a settlement and release of liability signed by us, the insured, and the claimant or the claimant's legal representative.

Id.

10

The Supreme Court of Georgia held that the insured was not entitled to recover the full amount of the settlement under the plain terms of the policy for the following reasons:

> First, the parties agreed that any voluntary payment made by Trinity without Central's consent (other than first aid) would not be allowed under the contract. There is no question that, under the facts of this case, Trinity's payment of $754,530 was voluntary in nature. Second, the contract clearly states that Central will be liable to pay those sums that Trinity is legally obligated to pay. A voluntary payment does not constitute a legal obligation. Finally, the contract also clearly indicates that Central may be sued based on a settlement agreement to which Central agreed or a final judgment entered after an actual trial. Trinity's payment to the Fowlers in this case does not qualify under either of these categories. Therefore, unless these policy provisions violate the law or judicially cognizable public policy, Trinity cannot seek reimbursement of its settlement with the Fowlers from Central.

Id. at 12-13.

Here, the plain language of the Primary Policy, to which the terms are deemed to apply to the Excess Policy, is indistinguishable from the insurance contract in Trinity Outdoor.[6] In Trinity Outdoor, the insured settled the underlying

---

[6] There is arguably one immaterial difference. The Primary Policy provides insurance coverage for a securities claim filed by a third-party only if the Plaintiff is "*legally obligated to pay as a result of a Securities Claim* first made during the Policy Period or Discovery Period, if applicable, against the Company for a Wrongful Act which takes place during or prior to the Policy Period." See Ex. A, attached to Compl. at 4 (emphasis added). Here, there was no legal obligation to pay the claim. The settlement payment was made voluntarily by Piedmont in its discretion.

suit, without the insurer's consent, for $754,530.  679 S.E.2d at 11.  The insurer in Trinity Outdoor refused to pay more than $200,000 to settle the matter.  Id.  The Supreme Court of Georgia found that the insured's agreement to settle the underlying suit for $754,530 was a "voluntary payment."  Id. at 12-13.  As in Trinity Outdoor, Plaintiff here reached a voluntary, unilateral, and discretionary agreement with Washtenaw to pay $4.9 million and did so without the Defendant's consent.[7]  Under Georgia law, an agreement to settle a claim is a "voluntary payment [that] does not constitute a legal obligation."  Id.  In the case here, Plaintiff's insurance contract with the Defendant provides for the payment of claims and defense costs only if the Plaintiff is "legally obligated" to pay a securities claim.  The Defendant is not obligated to pay any claims or costs arising

---

[7] The facts, as alleged in the Complaint, indicate that Plaintiff asked the Defendant to consent to a settlement amount "up to the remaining limits of the [insurance policy]" "*before* the mediation" with Washtenaw was scheduled to take place.  Compl. at ¶ 37 (emphasis added).  This fact shows that Plaintiff did not have a preliminary agreement with Washtenaw to settle the dispute, and Plaintiff did not know whether Washtenaw would settle the claim for a fixed sum.  Plaintiff, however, insisted that Defendant pay "up to the remaining limits of the [insurance policy]" to serve its own economic interests.  After the mediation, Washtenaw agreed to withdraw its appeal and settle the Securities Action for $4.9 million.  Id. at ¶ 39.  Plaintiff does not specifically allege that it again asked for the Defendant's consent after the mediation concluded.  The Court, however, assumes for the purposes of deciding this motion that Plaintiff agreed to settle the Securities Action for a fixed amount, specifically requested that the Defendant consent to the settlement amount, and that the Defendant refused to provide consent before Plaintiff settled the claims.

Case 1:13-cv-02128-WSD   Document 13   Filed 03/28/14   Page 13 of 19

out of a securities claim if the Plaintiff did not have a legal obligation to pay the settlement amount, and the Defendant did not consent to pay the settlement amount.  The Plaintiff's Complaint is required to be dismissed on this basis alone.

Plaintiff tries to distinguish Trinity Outdoor by arguing that Plaintiff's decision to settle the Securities Action, without Defendant's consent, cannot constitute as a "voluntary payment" because the Defendant unreasonably withheld its consent to settle the claim for $4.9 million.  Plaintiff makes this argument knowing that Defendant did not consent to the settlement amount that Plaintiff reached with Washtenaw.  The Primary Policy, the terms of which apply to the Excess Policy, provides that "No Claims Expenses shall be incurred or settlements made, contractual obligations assumed or liability admitted with respect to any Claim without the Insurer's written consent, which shall not be unreasonably withheld."  See Ex. A, attached to Compl. at 4.  Plaintiff's attempt to distinguish Trinity Outdoor by focusing myopically on one clause in one provision of the entire contract ignores the plain meaning of the Supreme Court of Georgia's opinion in Trinity Outdoor, and it ignores the plain terms of the insurance agreement itself.

The Supreme Court in Trinity Outdoor unequivocally held that a voluntary agreement to settle an underlying dispute without the insurer's consent is a

13

voluntary payment that does not constitute a legal obligation. Trinity Outdoor, LLC, 679 S.E.2d at 12-13. The interpretation of an insurance agreement begins with the text of the agreement itself. Id. at 12 (quoting Reed v. Auto-Owners Ins. Co., 667 S.E.2d 90 (Ga. 2008)). A plain reading of the consent-to-settle language in the contract is that a settlement may not be made without the insurer's consent to the settlement. The unambiguous language of the provision also is that if the Defendant unreasonably withholds consent to a settlement agreement reached by the Plaintiff, the Plaintiff can assert a claim for breach of the insurance agreement assuming that a judgment after an actual trial is entered against the insured, which exceeds the agreed amount of the potential settlement that Plaintiff had proposed to agree to with a third party. This interpretation is consistent with an insurer's implied duty—regardless of whether that duty is expressed in a written agreement—to "give equal consideration to the interests of the insured" in deciding whether to consent to a settlement agreement. S. Gen. Ins. Co. v. Holt, 416 S.E.2d 274, 276 (Ga. 1992).

That is, an insurance contract is not breached and consent cannot be deemed to have been unreasonably withheld until there is a finding regarding Plaintiff's liability, not just Plaintiff's discretion based on its perceived risk of failing to prevail in the case and its business interest to eliminate its exposure by settling the

Securities Action. Plaintiff's coverage argument ignores that "[l]iability policies generally include provisions that prohibit an insured from settling claims without the insurer's approval. These provisions enable insurers to control the course of litigation concerning such claims, and also serve to prevent potential fraud, collusion and bad faith on the part of the insureds." Trinity Outdoor, LLC, 679 S.E.2d at 12-13 (quoting Southern Guaranty Ins. Co. v. Dowse, 605 S.E.2d 27 (Ga. 2004)). If an insurer refuses to consent and, as a result, the insured does not settle and thereafter loses on the underlying claim, the insurer may be liable for the amount of the judgment and, if that award is greater than the coverage, for damages that could be well in excess of the insurance policy limits.

"The rules of construction require the [C]ourt to consider the policy as a whole, to give effect to each provision, and to interpret each provision to harmonize with each other." ALEA London Ltd. v. Woodcock, 649 S.E.2d 740, 745 (Ga. Ct. App. 2007). "[I]t is [also] well established that a court should avoid an interpretation of a contract which renders portions of the language of the contract meaningless." Id. Two other provisions of the Primary Policy, the terms of which are deemed to apply to the Excess Policy, demonstrate that Plaintiff does not have a right to relief, which further supports that the Complaint should be dismissed.

The insurance agreement between the Plaintiff and the Defendant expressly provides that the Defendant is required to pay only for amounts that Plaintiff legally is obligated to pay based on a securities claim. Plaintiff contends that it was "legally obligated" to pay $4.9 million to Washtenaw because the district court approved the settlement agreement. In other words, Plaintiff construes its unilateral and deliberate actions, taken without the Defendant's consent and in breach of its contractual obligations, as a "legal obligation" since the court approved its settlement with Washtenaw. The Court concludes that there is no basis in law or fact to find that the district court's approval of the settlement to which Plaintiff unilaterally agreed without the Defendant's consent is converted to an amount covered by the insurance agreement because the settlement was approved by a court.[8] The "voluntary act" occurred here when the Plaintiff unilaterally settled the claim without the Defendant's consent. That "voluntary act" was completed before the district court approved the settlement agreement. The district court's approval of the settlement does not convert an uncovered amount into a covered amount under the insurance agreement.

---

[8] The agreement ignores the role of the court in approving a securities fraud case. Courts traditionally approve the fairness of a settlement, including whether the settlement was negotiated in a fair and reasonable manner. In approving settlements, courts typically do not determine whether the settlement accurately reflects the liability of any party.

The Plaintiff also ignores, and its interpretation of the agreement fails to give effect to the "no action" provision of the Primary Policy. The "no action" provision provides that the Defendant may be sued only if the Plaintiff complies with all terms of the agreement, "and the amount of the [Plaintiff's] obligation to pay shall have been finally determined either by judgment against the [Plaintiff] after actual trial, or by written agreement of the [Plaintiff], the claimant and the [Defendant]." See Ex. A, attached to Compl. at 13. This language is identical to the "no action" provision provided in the insurance agreement in Trinity Outdoor. It unambiguously demonstrates that Plaintiff's claim under the Excess Policy can be maintained only when the claim arises out of a "settlement agreement to which [Defendant] agreed or a final judgment [was entered against the Plaintiff] after an actual trial." Trinity Outdoor, LLC, 679 S.E.2d at 12.

Plaintiff even contends that Defendant should be estopped from relying on the "no action" provision because the Defendant waived its right to enforce the "no action" provision. This shallow argument is based on a fundamental misapplication of basic contract law principles. Estoppel applies when an insurer abandons an insured because it denies coverage and refuses to defend an action. Id. at 13. It is undisputed here that Defendant provided Plaintiff with a defense, and that the defense has resulted in summary judgment in Plaintiff's favor on the

17

claims asserted by Washtenaw.  There are no facts to support that estoppel applies in this matter.  Plaintiff also has failed to plead any facts to plausibly support that Defendant waived its right to enforce the "no-action" provision in the Primary Policy.  Waiver of a contractual obligation or contractual benefit requires the intentional relinquishment of a known right.  <u>Vratsinas Const. Co. v. Triad Drywall, LLC</u>, 739 S.E.2d 493, 496 (Ga. Ct. App. 2013).  It must be "clear and unmistakable."  <u>Id.</u>  Plaintiff's own evidence shows that waiver cannot be reasonably inferred in this matter because the Defendant's letters explicitly stated that they were sent "subject to a complete reservation of all of XL Specialty's rights under the Policy, at law and in equity."  See Ex. 1, attached to Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss at 4.

The plain terms of the Primary Policy here, the absence of a judgment after trial or a settlement in which Defendant consented precludes coverage under the insurance agreement for the settlement amount to which Plaintiff unilaterally agreed and voluntarily paid.  For these reasons as discussed above, the Court concludes that the Plaintiff's Complaint is required to be dismissed.

### III.  CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that the Defendant's Motion to Dismiss is

**GRANTED** [6].

**SO ORDERED** this 28th day of March, 2014.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE